# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ZAFAR SHEIKH ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11 C 2334 |
| ) | |
| MARC LICHTMAN, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant County of Lake's (County) motion to dismiss and Defendant Marc Lichtman (Lichtman), Defendant Glen Bernfield (Bernfield), Defendant Bennett Klasky (Klasky), Defendant John Peterson (Peterson), Defendant David Waxman (Waxman), Defendant David Hoffman (Hoffman), Defendant Linda Sloan (Sloan), Defendant Lee Smith (Smith), Defendant Jason Berry (Berry), Defendant Michael Belsky (Belsky), Defendant Nancy Rotering (Rotering), and Defendant City of Highland Park's (City) (collectively referred to as "City Defendants") motion to dismiss. For the reasons stated below, the court grants the County's motion to dismiss, and the court grants, in part, and denies, in part, City Defendants' motion to dismiss.

## BACKGROUND

Plaintiff Zafar Sheikh (Sheikh) alleges that in early 2006, the County advertised the sale of four adjoining lots (Property) located in the City. According to Sheikh, a County employee indicated to Sheikh that the lots were each 140 feet long and 60 feet wide, making the Property 140 feet long by 240 feet wide. In addition, the County allegedly represented to Sheikh that the Property had a high appraisal value, which reflected the desirability of the Property's location. The County also allegedly indicated that the Property was fully buildable.

Sheikh further alleges that the City also represented to Sheikh that the lots constituting the Property had no problems and that the lots were fully buildable. Smith, who was an official in the City's Department of Community Development, allegedly indicated to Sheikh in writing that the Property could accommodate a 6,150 square foot house. Smith also allegedly verbally told Sheikh at some point that the Property was an interior lot and that therefore additional buildable space would be available to accommodate the home Sheikh intended to build on the Property (Proposed Home) after Sheikh obtained some standard, minimum zoning variances that were commonly allowed by the City.

In addition, Sheikh alleges that he met with Sloan, Berry, and other supervisory officials from the City to discuss the Proposed Home. Sloan and Berry allegedly confirmed Smith's statements, including that the Property was an interior lot and that Sheikh would not likely have to go to the zoning board for any variances. After allegedly receiving assurances regarding the Property from both the County

and the City, Sheikh purchased the Property. Sometime later, Sloan allegedly coached City staff to tell Sheikh that the Property was not buildable and that he should abandon his efforts to build in the City.

Upon purchasing the Property, Sheikh submitted an application to the City to consolidate the lots (Consolidation Application) and paid the appropriate fee (Application Fee). City officials allegedly indicated to Sheikh shortly after he submitted the Consolidation Application that it would be "approved shortly." (A. Compl. Par. 21). After his Consolidation Application had been pending for almost a year, the City allegedly required Sheikh to submit a second payment for the Application Fee because his first check for the Application Fee had expired. Sheikh alleges that he submitted a new check and building plans for the Proposed Home during the summer of 2007.

In late 2007 or early 2008, Sheikh allegedly sought building permits to build the Proposed Home and was allegedly told that his Consolidation Application needed to be approved before any building permits could be issued. Sheikh was also allegedly told that the Consolidation Application would only be approved if Sheikh purchased an additional lot that was adjacent to the Property (Adjacent Lot). According to Sheikh, the Adjacent Lot was not for sale but Sheikh nonetheless spent substantial time and money to discover the owner of the lot, which turned out to be a defunct corporation (Corporation) whose officers and owners had long been deceased. Sheikh allegedly notified the City regarding the ownership of the lot, and the City allegedly required Sheikh to locate the heirs of the officers and owners of

the Corporation (Heirs) so that Sheikh could purchase the Adjacent Lot.  Sheikh
alleges that he located the Heirs and engaged in an unsuccessful attempt to purchase
the Adjacent Lot.  At that point, the City allegedly indicated to Sheikh that his efforts
were sufficient and that his Consolidation Application would be approved without
the purchase of the Adjacent Lot.

Sheikh alleges that a short time later, when his Consolidation Application had
been pending for more than two years, he received notification that his Consolidation
Application would be forwarded to the Mayor's Office of the City (Mayor's Office),
which would let the City Counsel decide the matter.  Belsky was allegedly the Mayor
of the City at that time.  The Consolidation Application allegedly remained pending
with the City Counsel for several months, and after Sheikh made several inquiries
with the Mayor's Office, he was allegedly informed that the Mayor's Office planned
to refer the Consolidation Application to the Zoning Board of Appeals (ZBA).

Around this time, Sheikh was also allegedly informed by the City's
Department of Community Development that, based on a directive from the Mayor's
Office, the Property had been reclassified as a corner lot, which would allegedly
prevent Sheikh from building the Proposed Home on the Property without obtaining
major zoning variances from the City's ZBA.  Sheikh, through an attorney who had
been representing him in the matter, allegedly requested to have an informal hearing
before the ZBA (Informal Hearing) to discuss the zoning variances that would be
required to build the Proposed Home.  Lichtman, Bernfield, Klasky, Peterson,
Waxman, and Hoffman are allegedly members of the ZBA.  At the Informal Hearing,

the members of the ZBA allegedly indicated to Sheikh that the plans for the Proposed Home were good and that upon formal presentation to the ZBA, Sheikh would "get quick and speedy approval for his variances and consolidation requests." (A. Compl. Par. 29).

The first formal hearing allegedly occurred on May 5, 2010 (May 2010 Hearing). At the May 2010 Hearing, the ZBA allegedly requested that several revisions be made to the Proposed Home and indicated that if such revisions were made, "the plans and variances could be approved at the next meeting." (A. Compl. Par. 30). Sheikh alleges that some of the requested revisions fell outside the authority of the ZBA, but that he nonetheless made substantial revisions to the plans for the Proposed Home to meet the requirements articulated by the ZBA. Another formal hearing was held on November 18, 2010 (November 2010 Hearing), at which Sheikh allegedly presented the revised plans. At the November 2010 Hearing, the ZBA allegedly made various new demands relating to the Proposed Home. As part of the new demands, Lichtman, the Chairman of the ZBA, allegedly indicated that, due to the location of the Proposed Home, it would need to be "one of a kind aesthetically, architecturally and otherwise" so that it reflected positively on the City. (A. Compl. Par. 32).

Sheikh alleges that he revised the plans for the Proposed Home a second time to incorporate the ZBA's new demands and presented the second revised plan to the ZBA at a hearing held on January 6, 2011. After reviewing the second revised plan, the ZBA allegedly issued new demands, including that Sheikh fire his Indian

architect and hire an architect from the City and that Sheikh design a home to reflect positively on the City. Sheikh alleges that he refused to fire his Indian architect, but otherwise attempted to satisfy the ZBA's demands. Sheikh also alleges that a fourth hearing was held on February 17, 2011 (February 2011 Hearing), at which Sheikh presented the third revision of the plans for the Proposed Home along with sketches to show the appearance of the Proposed Home. The ZBA allegedly made certain positive comments regarding Sheikh's efforts and the plans for the Proposed Home, but voted to deny every one of Sheikh's requests for zoning variances.

Sheikh alleges that, at some point, one member of the ZBA indicated that the ZBA gets hundreds of variance requests a year, that 80 percent of them relate to corner lots, and that the requests for variances are almost always approved. Sheikh also alleges that various members of the ZBA, including Lichtman, indicated that one of the reasons the ZBA was denying Sheikh's requests for zoning variances was that the Proposed Home would change the character of the neighborhood, and that such statements by the ZBA relate to changing the racial character of the neighborhood. Sheikh further alleges that some members of the ZBA, including Klasky, were inclined to reject any plan for the Proposed Home submitted by Sheikh based on Sheikh's race, religion, and national origin, and that the ZBA's refusal to grant any zoning variances to Sheikh was designed to keep the area segregated. In addition, Sheikh alleges as evidence of the ZBA's racial animosity, that some members of the ZBA even expressed an unwillingness to permit certain aspects of the Proposed Home that conformed to the zoning ordinances, such as that the Proposed Home

would be two stories in height.

Sheikh also alleges that on approximately March 23, 2011, there was a unanimous vote to approve his Consolidation Application. Notwithstanding the vote, the City Counsel, including Rotering, decided at a hearing held on April 11, 2011 (April 2011 Hearing) to postpone the final, formal approval of the Consolidation Application for another year, allegedly in retaliation against Sheikh for filing the instant action. In addition, at the April 2011 Hearing, an employee of the City allegedly made libelous and defamatory comments about Sheikh. The City Counsel has also allegedly refused to discuss the Consolidation Application with Sheikh since the filing of the instant action, also allegedly for the purpose of retaliating against Sheikh.

Sheikh indicates in his *pro se* amended complaint that he is bringing a claim against the County alleging a violation of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*. With respect to City Defendants, Sheikh indicates in his *pro se* complaint that he is bringing claims alleging violations of 42 U.S.C. § 1981 (Section 1981) (A. Compl. Par. 44), claims alleging violations of 42 U.S.C. § 1982 (Section 1982) (A Compl. Par. 10), claims alleging violations of the Fair Housing Act (FHA), 42 U.S.C. § 3601 *et seq.* (A Compl. Par. 10), claims brought pursuant to 42 U.S.C. § 1983 (Section 1983) alleging retaliation in violation of the First Amendment and alleging a violation of his First Amendment right to petition, claims brought pursuant to Section 1983 alleging violations of the equal protection and due process clauses of the Fourteenth

Amendment, and claims brought pursuant to Section 1983 alleging a taking in violation of the Fifth Amendment. In addition, Sheikh indicates that he is bringing claims against the City for violation of a consent decree and for defamation. County Defendants have moved to dismiss the RICO claim, and City Defendants have moved to dismiss the claims brought against individuals who are not ZBA members, the First Amendment retaliation claims, the First Amendment right to petition claims, the Fourteenth Amendment equal protection claims, the Fourteenth Amendment due process claims, the Fifth Amendment taking claims, the claim relating to the consent decree, and the state law defamation claim.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal quotations omitted)(quoting in part *Twombly*, 550 U.S. at 570). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations

omitted).

**DISCUSSION**

Since Sheikh is proceeding *pro se*, the court has liberally construed his complaint in assessing the claims that he seeks to bring in the instant action. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000)(stating that "*pro se* complaints are to be liberally construed and not held to the stringent standards expected of pleadings drafted by lawyers").

I.  Claims Brought Against County

The County argues that Sheikh has not pled sufficient facts to state a RICO claim, that such claim is barred by the statute of limitations, and that such claim is barred by the Illinois Tort Immunity Act (ITIA), 745 ILCS 10-2/201.  Pursuant to 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c). To state a valid RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Slaney v. The Intern. Amateur Athletic Federation*, 244 F.3d 580, 597 (7th Cir. 2001)(citation omitted).  Under RICO, "racketeering activity" includes "any act which is indictable under [18 U.S.C.] section 1341 (relating to mail fraud), [and 18

9

U.S.C.] section 1343 (relating to wire fraud). . . ." 18 U.S.C. § 1961(1)(B). A pattern of racketeering activity is sufficiently established if, "in addition to at least two predicate acts, a RICO plaintiff shows 'that the racketeering predicates are related, and that they amount to or pose a threat of *continued* criminal activity.'" *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 298 (7th Cir. 2003)(citations omitted).

To support his RICO claim, Sheikh has alleged that the County committed wire fraud and mail fraud by making certain misrepresentations in connection with the sale of the Property to him. Sheikh also alleges that such misrepresentations are commonly made by the County or its employees in order to aggressively market and sell property owned by the County. Such facts are not sufficient to allege a pattern of racketeering activity. *See Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 632-33 (7th Cir. 2001)(affirming dismissal of a RICO claim under Rule 12(b)(6) after finding that plaintiff's allegations relating to certain alleged misrepresentations made in connection with the sale of furniture in two distinct transactions with two different customers did not sufficiently allege a pattern of racketeering activity by defendant); *see also New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1478 (7th Cir. 1990)(indicating that in determining whether predicate acts establish a pattern of racketeering activity, the court should consider "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries")(citations omitted)(internal quotations omitted). In addition, the

court notes that Sheikh has sued the County without pleading the existence of an enterprise separate and distinct from the County. *See, e.g., Jay E. Hayden Foundation v. First Neighbor Bank, N.A.*, 610 F.3d 382, 389 (7th Cir. 2010). Therefore, Sheikh has not sufficiently stated a RICO claim against the County.

Since Sheikh has failed to plead sufficient facts to state a RICO claim against the County, the court need not address the County's statute of limitations argument or the applicability of the ITIA to the RICO claim. However, the court notes that to the extent Sheikh seeks to bring claims against the County for negligent or intentional misrepresentation under Illinois state law, such claims would also fail, since under the ITIA, "[a] local public entity is not liable for an injury caused by an oral promise or misrepresentation of its employee, whether or not such promise or misrepresentation is negligent or intentional." 745 ILCS 10/2-106. Based upon the above, the court grants the County's motion to dismiss.

## II. Claims Brought Against City Defendants

City Defendants argue that the court should dismiss the claims brought against individuals who are not ZBA members, the First Amendment retaliation claims, the First Amendment right to petition claims, the Fourteenth Amendment equal protection claims, the Fourteenth Amendment due process claims, the Fifth Amendment taking claims, the claim relating to the consent decree, and the defamation claim. City Defendants have not moved to dismiss the Section 1981 claims, the Section 1982 claims, or the FHA claims.

<u>A.  Section 1983 Claims Brought Against Non-ZBA Members</u>

City Defendants argue that the Section 1983 claims against individuals who are not ZBA members should be dismissed because Sheikh has not alleged that non-ZBA members were personally involved in any discriminatory or unconstitutional acts.  Sheikh's 1983 claims against the individual City Defendants are premised upon the alleged delay in adjudicating his Consolidation Application, the ZBA's refusal to grant Sheikh zoning variances to which he is allegedly entitled, and the refusal of various City officials to discuss the Consolidation Application with Sheikh after the filing of the instant action.  Sheikh has not alleged any facts to suggest that Sloan, Smith, Barry, or Belsky were directly involved in such acts.  *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002)(stating that "a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation").  Sloan, Smith, and Barry are merely alleged to have made certain representations to Sheikh regarding the Property before Sheikh purchased it.  In addition, at some point Sloan allegedly told City officials to communicate to Sheikh that the Property was not buildable and that Sheikh should abandon his efforts to build in the City.  With respect to Belsky, Sheikh alleges that Belsky is the former Mayor of the City.  However, Sheikh does not allege that Belsky himself played any role in the decision-making process with respect to the Property, and instead merely alleges that the Mayor's Office was involved.  Such facts do not suggest that Sloan, Smith, Barry, or Belsky had any involvement in the decision-making process with respect to the Property.  Therefore, the Section 1983

claims brought against Sloan, Smith, Barry, and Belsky are dismissed.

With respect to Rotering, Sheikh alleges that Rotering is a former City Counsel member who was involved in the adjudication of the Consolidation Application. For example, Sheikh alleges that the City Counsel, including Rotering, postponed its vote on the Consolidation Application even though it had been pending for many years and the ZBA voted to approve it. Therefore, City Defendants' motion to dismiss the Section 1983 claims brought against Rotering is denied.

### B.  Sufficiency of Claims Brought Pursuant to Section 1983

City Defendants have moved to dismiss the claims brought against City Defendants pursuant to Section 1983. To state a valid claim for relief under Section 1983 against an individual, "a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law." *Racine Charter One, Inc. v. Racine Unified School Dist.*, 424 F.3d 677, 680 (7th Cir. 2005). To state a claim for relief under Section 1983 against a municipality, a plaintiff must allege that the constitutional violation was made by "an employee with final policymaking authority" or that the municipality had a "policy, practice, or custom" that was the moving force for the constitutional violation. *Palka v. City of Chicago*, 662 F.3d 428, 434 (7th Cir. 2011); *see also Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2010)(stating that "[a] governmental body's policies must be the *moving* force behind the constitutional violation" before liability can be imposed).

### 1.  First Amendment Retaliation Claims

City Defendants argue that Sheikh has not stated a claim under Section 1983 for First Amendment retaliation.  To succeed on a First Amendment retaliation claim, a plaintiff must show "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) a causal connection between the two."  *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010)(citation omitted)(internal quotations omitted).  City Defendants argue that Sheikh has not alleged facts to support the second element.  Sheikh has alleged that, as a result of filing the instant action, the City Counsel has retaliated against him by postponing its adjudication of the Consolidation Application and refusing to discuss the Consolidation Application with him further.  Given the fact that the Consolidation Application had already allegedly been pending for five years and the fact that Sheikh was allegedly told to direct all further inquiries about the Consolidation Application to the City's attorney, the alleged retaliation is not sufficient "to 'deter a person of ordinary firmness'" from exercising First Amendment activity in the future."  *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).  Therefore, City Defendants' motion to dismiss the First Amendment retaliation claims brought against them is granted.


### 2. First Amendment Right to Petition Claims

City Defendants argue that Sheikh has not stated a claim against City Defendants for direct violation of his First Amendment right to petition.  City

Defendants correctly point out that the right to petition "does not impose any affirmative obligation on the government to listen [or] to respond" to a petition. *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979); *see also Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003)(stating that "[t]he right to petition the government for redress of grievances, however, does not guarantee a favorable response, or indeed any response, from state officials"). In addition, Sheikh has not alleged that he has suffered any injury based on the City Counsel's refusal to speak with him further regarding the Consolidation Application. *See Bridges*, 557 F.3d at 555 (indicating that "since Section 1983 is a tort statute, [a plaintiff] must have suffered a harm to have a cognizable claim," and that a plaintiff "exercising his right to petition the government for redress of grievances through [a] lawsuit, [] has not been harmed")(citing *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996)( stating that a plaintiff's "invocation of the judicial process indicates that . . . his First Amendment right to petition the government for a redress of grievances" has not been violated); *see also Baltoski*, 291 F. Supp. 2d at 811 (stating that "the First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy"). Therefore, City Defendants' motion to dismiss the First Amendment right to petition claims brought against them is granted.

3.  Fourteenth Amendment Equal Protection Claims

City Defendants argue that Sheikh has not stated an equal protection claim against them. Pursuant to the Equal Protection Clause of the Fourteenth

Amendment, "'no State shall . . . . deny to any persons within its jurisdiction the equal protection of laws.'"  *Id.* (quoting U.S. Const. amend. XIV, § 1).  In other words, "[t]he Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'"  *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010).

Sheikh has alleged that Lichtman, Bernfield, Klasky, Peterson, Waxman, Hoffman, Rotering, have refused to approve his Consolidation Application or grant him any of the zoning variances that he has requested.  Sheikh has also alleged facts relating to various delays and roadblocks he has encountered while trying to get approval of his Consolidation Application and while trying to obtain the zoning variances he has requested.  Sheikh has further alleged that certain comments made to Sheikh indicate that the relief he is requesting is regularly granted to others and that certain other comments indicate that certain City Defendants' refusal to grant Sheikh's requests for consolidation of the lots and zoning variances is based on Sheikh's race.  In addition, Sheikh has alleged that the City has a policy, practice or custom of discouraging non-whites from establishing their residences in the City.  Such facts are sufficient to state equal protection claims against Lichtman, Bernfield, Klasky, Peterson, Waxman, Hoffman, Rotering, and the City.

4.  Fourteenth Amendment Due Process Claims

City Defendants argue that Sheikh has failed to state either a procedural or

substantive due process claim against them.  To assert a Fourteenth Amendment substantive or procedural due process claim, "a party . . . must establish that it has a 'legitimate claim of entitlement' to the right being asserted."  *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990).  In addition, to bring a substantive due process claim, a plaintiff must also allege "that [a] decision was arbitrary and irrational," and that there was "a separate constitutional violation or the inadequacy of state law remedies.'"  *New Burnham Prairie Homes, Inc.,* 910 F.2d at 1480 (citation omitted).  To bring a procedural due process claim, a plaintiff must not only allege entitlement to the right being asserted, he must also allege that there is no adequate "state remedy to cure the sort of 'random and unauthorized' [state action] of which the plaintiff[] complains."  *Id.*

In the instant action, Sheikh has alleged facts to plausibly suggest that he is entitled to the zoning relief he sought, including that others seeking the same relief who were similar to Sheikh in all manners but race were granted such relief.  Sheikh has also alleged facts to plausibly suggest that the decisions made by Lichtman, Bernfield, Klasky, Peterson, Waxman, Hoffman, Rotering were arbitrary and irrational and were motivated by an alleged policy, practice or custom of discouraging non-whites from establishing their residences in the City.  For instance, Sheikh alleges that certain City Defendants indicated that the Proposed Home would not be allowed unless it was one story in height despite the fact that the zoning code allowed for a two-story home.  In addition, as discussed above, Sheikh has alleged facts to suggest that a separate constitutional violation has occurred.  Therefore,

17

Sheikh has stated a substantive due process claim against City Defendants. In contrast, Sheikh has not alleged any facts relating to whether a state remedy is available to him to address his complaints. Therefore, City Defendants' motion to dismiss the procedural due process claims brought against them is granted. In regard to the substantive due process claims, the court notes that at summary judgement, Sheikh will be required to point to sufficient evidence of his entitlement to the relief sought.

### 5. Fifth Amendment Taking Claims

City Defendants argue that Sheikh's Fifth Amendment takings claims must be dismissed because this court does not have jurisdiction to consider such claims. Under the Fifth Amendment, no person shall be "deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use without just compensation." U.S. Const. amend. V. To succeed on a Fifth Amendment takings claim, a plaintiff must show that he "has availed [him]self of state court remedies." *Covington Court, Ltd. v. Village of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996); *see also Flying J Inc. v. City of New Haven*, 549 F.3d 538, 543 (7th Cir. 2008)(stating that "in cases where a developer's proposed use is clearly at odds with local zoning ordinances, the developer must first seek a variance in the local zoning laws and then pursue whatever state court remedies are available before filing a takings claim in federal court"). Sheikh alleges that certain witnesses testified at some point during the formal hearings that they did not want the Property to be built

upon and that they had purchased their own properties with the understanding that the Property would remain vacant. However, Sheikh has not alleged that he sought any relief in state court regarding the Property. Therefore, City Defendants' motion to dismiss the Fifth Amendment claims brought against them is granted.

### C.  Claim Against City Relating to Consent Decree

City Defendants argue that Sheikh lacks standing to pursue relief based on an alleged violation of the consent decree entered into by the City in *Ledford v. City of Highland Park,* case number 00 C 4212. A review of the consent decree reveals that it has expired, that it does not pertain to the same issues raised by Sheikh in the instant action, that Sheikh would not fall within the definition of a class member, and that jurisdiction to enforce the consent decree was retained by the district judge who entered the order. 2000 WL 1053967 (N.D. Ill. 2000); (00 C 4212, DE 25). In addition, the consent decree provides that "nothing herein shall be interpreted or construed as an acknowledgment, admission, or evidence of liability on the part of the City of Highland Park. . . ." (DE 25 Par. 8). Based on the above, Sheikh cannot state a claim against the City based upon an alleged violation of the consent decree.

### D.  Defamation Claim Against City

City Defendants argue that the state law defamation claim should be dismissed because Sheikh has not met the pleading standards applicable to defamation claims and because the individual alleged to have made the defamatory statements was an

attorney for the City (City Attorney) who is entitled to absolute immunity with respect to the statements made at the April 2011 Hearing. Under Illinois law, "[a] witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding." *Krueger v. Lewis*, 834 N.E.2d 457, 464 (Ill. App. Ct. 2005). Sheikh argues that absolute immunity does not apply to a part-time attorney retained by the City. However, Illinois law provides an absolute privilege to publish defamatory matter in certain situations and makes no distinction between public employees and private citizens with respect to that privilege. Illinois law provides an absolute privilege to any "witness," so long as his statements are made in connection with a legislative proceeding and the statements relate to the proceeding. In addition, to the extent Sheikh relies on *Gonzalez v. Spencer*, 336 F3d 832 (9th Cir. 2003) to argue that a part-time attorney retained by the City would not be entitled to the absolute privilege, the court notes that *Gonzalez* does not implicate the absolute privilege provided under Illinois law, and further that *Gonzalez* was recently overruled by the Supreme Court. *See Filarsky v. Delia*, 2012 WL 1288731, at *12 (2012)(holding that in applying the doctrine of qualified immunity, no distinction should be made between public employees and individuals retained by the city on a part-time basis).

Sheikh also argues that the April 2011 Hearing was not a legislative proceeding, and therefore the absolute privilege does not attach to the City Attorney's statements. However, Sheikh indicates in the amended complaint that

both his Consolidation Application and his requests for zoning variances were to be addressed at the April 2011 Hearing. (A. Compl. Par. 69). City Defendants correctly point out that Illinois law provides that such matters are legislative in nature. 65 ILCS 5/11-13-25(a). In addition, Sheikh indicates in the amended complaint that the allegedly defamatory statements made by the City Attorney related to the Consolidation Application and the zoning relief sought by Sheikh. Therefore, the City Attorney's statements are absolutely privileged. Since the allegations in the amended complaint indicate that the City Attorney is entitled to absolute privilege with respect to his allegedly defamatory statements, the court need not address whether Sheikh's allegations regarding the defamatory statements are sufficiently detailed in nature.

### E. Other "Claims" Alleged by Sheikh

The court notes that City Defendants have also argued that this court lacks subject matter jurisdiction to consider whether the Property should be classified as a corner lot or an interior lot, since Sheikh failed to exhaust administrative remedies regarding the City's decision to classify the Property as a corner lot. Although Sheikh styles the issue as a separate claim, City Defendants' alleged violation of their own zoning code does not form the basis of any separate, cognizable claim. Instead, the allegations relating to the re-classification of the Property are merely used to support Sheikh's contention that he was discriminated against in violation of various federal laws. Similarly, Sheikh's request for declaratory relief with respect

to the size of his property is also not a separate, cognizable claim.  Instead, the Property's size may bear upon the issue of whether City Defendants unlawfully discriminated against Sheikh in refusing to grant him zoning variances to build the Proposed Home.  Based upon the above, the court grants City Defendants' motion to dismiss all the Section 1983 claims brought against Sloan, Smith, Barry, and Belsky; the First Amendment retaliation claims brought against City Defendants; the First Amendment right to petition claims brought against City Defendants; the Fourteenth Amendment procedural due process claims brought against City Defendants; the Fifth Amendment taking claims brought against City Defendants; the claim brought against the City relating to the consent decree; and the defamation claim brought against the City.  The court denies City Defendants' motion to dismiss all Section 1983 claims brought against Rotering; the Fourteenth Amendment equal protection claims brought against City Defendants; and the Fourteenth Amendment substantive due process claims brought against City Defendants.  In denying at this stage of the proceedings City Defendants motion to dismiss certain claims, this court notes that it must take all allegations as true at this stage of the proceedings.  However, at summary judgment stage of the proceedings, Sheikh will need to point to sufficient evidence to support his remaining claims.

## CONCLUSION

Based on the foregoing analysis, the court grants the County's motion to dismiss and the court grants in part and denies in part City Defendants' motion to

dismiss.  In addition, based on the above, the court denies as moot Sheikh's motion to present oral arguments and Sheikh's motion to disqualify Holland and Knight from representing City Defendants.


Samuel Der-Yeghiayan
United States District Court Judge

Dated:   April 19, 2012